394 So.2d 564 (1981)
Donna H. HUNT, Appellant,
v.
Jack R. HUNT, Appellee.
No. 00-145/T1-104.
District Court of Appeal of Florida, Fifth District.
March 4, 1981.
Selig I. Goldin, Gainesville, for appellant.
H. Charles Woerner, Jr., South Daytona, for appellee.
*565 FRANK D. UPCHURCH, Jr., Judge.
Donna H. Hunt, the former wife, appeals a judgment of the Circuit Court for Volusia County modifying a final judgment in a dissolution case. The lower court terminated the wife's permanent alimony rights, denied her petition for an increase in alimony, and on rehearing, terminated any jurisdiction to award her alimony after June 1, 1980. We affirm in part and reverse in part.
The Hunts were married in 1956. The 1973 judgment of dissolution awarded the wife $700.00 per month permanent alimony and no other assets. At the time of the petition for modification, Mrs. Hunt was sixty years of age, and claimed to be in poor health. At the time of the dissolution, she had a masters degree in education. Immediately prior to the dissolution, her teaching certificate had lapsed. Her earnings at that time are unknown though she did make almost $8,000.00 in 1964. At the time of the petition, she claimed she had no income other than the alimony.
While the trial court's action may seem harsh at first glance and we might not have reached this result, it is not the function of this court to substitute its judgment for that of the lower court. The trial court is the trier of fact and its findings will not be disturbed on appeal if supported by competent substantial evidence. Shaw v. Shaw, 334 So.2d 13 (Fla. 1976). The trial court undoubtedly determined that some of Mrs. Hunt's uncorroborated proof was unreliable or unbelievable. There is ample support in the record to question Mrs. Hunt's credibility.
The testimony of Mrs. Hunt conflicted with that of Mr. Hunt. The trial court could have concluded that Mrs. Hunt deliberately undervalued her assets and overstated her needs. For example, Mrs. Hunt claimed a need for an increase in alimony from $700.00 to $2,000.00 per month minimum. She claimed a need for $65,000.00 per year. She valued property she acquired in 1974 at $35,000.00 which a M.A.I. appraiser valued at $53,000.00. Another parcel she valued at $12,000.00 was appraised at $26,000.00. Mrs. Hunt permitted her teaching certificate to lapse, which the trial judge could have concluded was premeditated. While complaining of her precarious finances and health, she has found strength and funds to attend a seaweed symposium in Santa Barbara, California and to observe unique life forms in the Galapagos Islands. She was also able to visit for a two week conference in Athens, Georgia and to make several trips around the state, but was unable to devote more than two hours per day to her studies because she had to be with her mother. Property which had been bringing in $500.00 per month in rent the year before was unrented at the time her financial affidavit was filed.
While Mrs. Hunt had a master's degree in education after the divorce, she pursued an entirely new field, marine biology, in which to obtain her doctorate even though her future employment prospects were very poor. A professor testified that in the field of marine biology the prospects of employment were poor, less than 50% for a young person, but for Mrs. Hunt even upon an award of a doctorate her chances were "nil." She attributed her lack of progress to poor health and needs of her mother. She played and taught tennis, but contended that because of severe arthritis she had difficulty with the controls of a microscope.
The trial court specifically found:
The wife has a master's degree in education. She taught school for ten years and allowed her teacher's certificate to lapse the year the dissolution action was filed. After the dissolution of her marriage, she was accepted in a doctoral program at the University of Florida. She has pursued that course for five years. Her testimony leaves serious doubt as to whether she will ever complete the program and obtain her degree in her chosen field of marine biology. There was even some suggestion she might change her field. It is abundantly clear to the court that wife is a qualified and experienced teacher. In addition to teaching before the dissolution, she taught college classes after *566 the dissolution as a duty of her assistantship while pursuing her degree. At that time, she was conducting research in the laboratory and doing her course work. Wife is capable of supporting herself. She was unemployed at the time of the dissolution and required some period to obtain employment and re-establish her life. Wife does not have a vested right in husband's earnings forever nor is husband obligated to maintain her as a student forever. Although wife claims poor health, her low blood sugar condition has not impeded her ability to meet the demands of her doctoral program nor has it affected her ability to teach or play tennis.
Since the dissolution, wife has acquired assets even though she has not held a full time job. She owns two homes. One in Gainesville and one in Daytona Beach. She does not use the home in Daytona Beach but indicated she intends to retain it. The broker testified the value of the Daytona Beach property was $26,000.00.
These findings are supported by substantial evidence in the record and should not be disturbed on appeal absent a showing of an abuse of discretion by the trial court. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). However, the court should have retained jurisdiction to award alimony in the future. See Davis v. Davis, 358 So.2d 126 (Fla. 2d DCA 1978); Mumm v. Mumm, 353 So.2d 134 (Fla. 3d DCA 1977); Hyatt v. Hyatt, 315 So.2d 11 (Fla. 3d DCA 1975). Mrs. Hunt was sixty years old and while her health at this time does not affect her ability to support herself, it may in the future.
The order of the trial court dated March 28, 1979 suspending the alimony award is affirmed but the order of May 14, 1979, as amended by the order of May 19, 1979 which terminated the jurisdiction of the court to award alimony in the future, is reversed.
DAUKSCH, C.J., concurs.
SHARP, J., dissents with opinion.
SHARP, J., dissenting.
I dissent in this case because the record fails to show any basis to sustain the trial judge's required and essential determination that the circumstances concerning these parties or one of them had substantially changed since the original dissolution judgment in which the wife was awarded permanent alimony in the amount of $700.00 per month. This determination is essential to insure some kind of finality in domestic relations litigation, and to prevent the trial and appellate courts from being inundated by suits brought by parties who are dissatisfied with their dissolution judgments. Withers v. Withers, 390 So.2d 453 (Fla. 2d DCA 1980); Bragdon v. Bragdon, 393 So.2d 73 (Fla. 5th DCA 1981); McBride v. McBride, 352 So.2d 1254 (Fla. 1st DCA 1977); Ashburn v. Ashburn, 350 So.2d 1158 (Fla. 2d DCA 1977); Mosher v. Mosher, 321 So.2d 450 (Fla. 2d DCA 1975).
Where the modification results in termination of a permanent alimony award, the party seeking the change must clearly establish circumstances not present and contemplated at the time of the original judgment, and the showing should establish one or both of the following: that the complaining party is no longer able to pay the required amount of alimony; or that the recipient is now able to support himself or herself in a manner beyond that existent at the time of the original judgment. Withers v. Withers.
The first situation is not appropriate in this case. At the time of the dissolution, the husband's salary was $23,000 per year and his net worth was $40,000. At the time of the modification proceeding his income was $46,000 per year and his net worth was $85,000. He had maintained his position as president of the Embry-Riddle Aeronautical University in Daytona Beach, and he enjoyed various additional benefits related to his presidency and his status as a retired Navy officer. He had no dependents.
Nor did the record show any substantial change in Mrs. Hunt's financial status or her ability to be self-supporting. In granting the modification, the trial judge noted *567 that Mrs. Hunt had a master's degree in education and had been employed as a teacher 7 years prior to her marriage to Mr. Hunt. This situation existed at the time of the original dissolution. The trial judge also noted she had been working on her PhD at Gainesville in marine biology, and was in good enough health to play tennis occasionally and travel. He did find however, that because of her poor record in ability to do research, it was unlikely that she would ever obtain her degree. At the time of the modification proceeding, the record showed she had been dropped from the graduate program because of her unsatisfactory progress in research, due in part to arthritis in her hands and her need to care for her elderly mother who lived with her.
There was no evidence whatsoever that Mrs. Hunt was or had become in any way self-supporting since the dissolution proceeding. Her income tax returns showed she earned small amounts through various "assistantships" at the University (a method to help financially needy students finance their education); but the total amounts earned were less than the sums she earned in part-time work while she was married to Mr. Hunt. In any event, she was not eligible for any more "assistantships."
Through the help of her mother, Mrs. Hunt had acquired a small rental property in Daytona Beach and a large residence in Gainesville they had hoped to rent in part to students. But again, Mrs. Hunt's income tax returns showed, as did her unrefuted testimony, that she had operated these properties at a loss because the rents never equalled the cost of maintenance, taxes and repair. The Gainesville property was in such bad repair the city had refused her permits to rent the property, and she had no funds to make needed major repairs.
In sum, the record showed that Mrs. Hunt, at the time of the modification proceeding was 60 years old, and in poor health; and that the likelihood of her becoming self-supporting at this point in her life was even less than at the time of the dissolution.[1] Permanent alimony should not have been terminated in this case. Coe v. Coe, 352 So.2d 559 (Fla. 2d DCA 1977); Howell v. Howell, 301 So.2d 781 (Fla. 2d DCA 1974); DeFrancisco v. DeFrancisco, 273 So.2d 780 (Fla. 2d DCA 1973). To conclude otherwise is, in my judgment, an abuse of discretion and I would reverse the judgment appealed insofar as it terminated permanent alimony for Mrs. Hunt.
NOTES
[1] It is not a realistic remedy as the majority opinion suggests, to have the lower court maintain jurisdiction to award alimony later, should Mrs. Hunt later "need" it. In such a proceeding she will have the burden of proving a "substantial change of circumstances" from the present situation  not an inconsequential matter. Colucci v. Colucci, 392 So.2d 577 (Fla. 3d DCA 1980).